May it please the Court, my name is Alan Hurston. I represent James Lombardo. This case is at a very early stage of the proceedings. The trial court dismissed it for failure to state a cause of action. As a result, no discovery has been conducted and no evidence has been introduced. The amended complaint alleges both a facial and, as applied, challenge to Oregon's regulation of residential signs. Mr. Lombardo wants to display a sign at his residence, a sign that would be 8 feet by 4 feet. Now, he can display a sign with commercial on-site speech saying something like My understanding was, if he has an apple stand at his house, he can have an apples-for-sale sign. If he has Peace in the Gulf headquarters at his house, if that's where they meet, he can have a Peace in the Gulf sign. And if the apples-for-sale are someplace else, he can't have an apples-for-sale sign at his house displayed the size of a sheet of plywood. And if the Peace in the Gulf headquarters are someplace else, he can't have a Peace in the Gulf sign. And so it looks like whether he can have the sign or not depends entirely on whether the activity that the sign tells the motorists about is at that location, not what it says. Well, Judge Kleinfeld, Oregon specifically targets this type of speech. Very few of us have headquarters at our residence of some type of movement. When you say Oregon targets that type of speech, I don't get that from the statutes. So tell me what you're talking about in the statutory language. Well, by allowing on-site speech, whether it be commercial or non-commercial, very few of us have headquarters of movements at our residence of political speech. Many of us, though, do have some type of commercial thing going at the house. What's to stop us? What's to stop him from having the headquarters of the Peace in the Gulf Association at his house? Yes, that's possible, but it's very rare. But Oregon does. What's to stop him? Oh, nothing other than zoning. Well, then what's the restriction on his speech? Because he can't say that. He can't say commercial speech. By doing that, Oregon inverts the proper First Amendment analysis because it allows commercial speech where there are restrictions on non-commercial speech. I'm thinking people have political headquarters at their house all the time. I remember when I used to be active, the district meetings where people would select delegates to the state central committee and that sort of thing would all be at people's houses. That's where the headquarters were, the districts. Well, maybe. I'm not familiar with that. Mr. Hersen, following up on Judge Kleinfeld's question, would Oregon demand any particular kind of qualifications from your client in order to demonstrate that he really did have a headquarters? I mean, in other words, would Oregon demand incorporation or something else as evidence before they would allow the headquarters for the Peace in the Gulf movement? Yes. My guess is yes, but there's been no evidence introduced in this case, and I don't think there's any case going to Oregon on this. What if he had a sign that said, the people in this house support Joe for president? I think that would be disallowed if it was a sign. I'm not sure why. How do we know that? And if that's an activity conducted on the premises, they're supporting Joe for president? Well, that would do away with the entire statute. The statute, as interpreted by the Attorney General, that would not be true, because the Attorney General's position is it has to be some type of headquarters. Attorney General, you mean litigation position, is that what you mean? That's its litigation position. But there's been no interpretation. If we thought it was a constitutional problem and thought that it was that to avoid the constitutional problem, we should construe the statute that way. Is there any indication that that would be an erroneous construction of the statute? I think in some of the cases of the court of appeals, in the out-of-immediate dimensions cases. I'm sorry? There's a case of out-of-immediate dimensions at the court of appeals. Following up on Judge Berzon's question, there are a number of cases now pending before the Oregon Supreme Court, right? Yes. On this statute. Do those cases involve that question or the similar questions? No. None of those. That question is not presented before the Oregon Supreme Court. With respect to the residential issues, your client would be able to have his, you know, freedom or peace in the Gulf, but it would be required to be a smaller sign. Is that correct? Yes. What is allowed is 4 feet by 3 feet. It's a 12-foot sign. And so in other words, if that's the only restriction on the political speech is the size of it, are there any cases that would suggest that that delineation would be unconstitutional? Well, I think so, because it goes back to giving greater protection to commercial speech, allowing commercial speech of any size. See, the large sign can be commercial on site speech, but not the political. But wait a minute. Under the temporary sign structure, you would be allowed to get a variance, could you not? You could go up to the 4 by 8. Yes. With a variance or a permit, you can go larger. And has your client attempted to get that and been turned down? No, he hasn't. So what then are we looking at in terms of the actual, say you bring a facial and as applied? It's quite possible that your client could have gotten a variance and allowed to put up the sign with a statement. Well, under Shuttlesworth, we don't believe so, because we believe that there are no standards for the variance, because variance is allowed for good cause shown. And there were no adequate definition of that term. Well, that doesn't say you'd be turned down, though. You may have a separate objection that there's too much discretion and not fair enough standards. But that doesn't answer the question as to how do we know that your client would have been turned down. No, but in Shuttlesworth, the Court said that when we have a nonstandardless permit system, the person who wants to display his speech may engage in that speech if he wants to, and doesn't have to comply with the requirements of the statute. Do you have an as applied challenge? Go ahead. Well, go ahead. Do you have an as applied challenge in this appeal? Yes. It's alleged in the complaint that it's both facial and as applied. All right. It seems like the one problem of whether they would turn him down or not would be whether they would consider the content of the sign. But we know for a fact that under this law, the Department shall not consider the content of the sign and whether to allow a variance. In fact, I was quoting from subsection CEC2 or C2 of 377.735. Yes, but in Chicago, Thomas v. Chicago Park District, the Supreme Court said that even content neutral statutes must have adequate safeguards to prevent the use of unbridled discretion. And that's what we have here. Even if it's content neutral, even if they don't look at the word. Wait a minute. We've already established he can express his political sentiment, peace in the Gulf, on a sign three by four without asking anybody's permission. So he can't express it. If he has the headquarters of peace in the Gulf, if that activity is conducted at his house, he can have his four by eight sign. He can have his billboard at his house. He can turn the whole house into a billboard. And we've further established that even if he doesn't have the headquarters at his house of the Peace in the Gulf Association, he can get a variance. And while there may be some argument about what the standards are, we know one of them is for sure, and that is the content can't be considered. So I'm having trouble seeing any discrimination against political as opposed to commercial speech and any restriction on his ability to express himself. Well, the variance is only good for 60 days rather than the entire time, unlimited time period. And these days, the presidential election, the 60 days, for example, isn't long enough. That election period goes much longer. But also this Court has a long tradition. But that wasn't true of that for residential signs. No, I disagree. The regulations, OAR 734-060-10753A, which limits it, the variance, to 60 days. But the statute which it's implementing says that a sign erected by a resident on the residential property may remain in place for longer than 60 days in a calendar year. So that's permissive, and you're suggesting that the regulation has construed that to limit it to 60 days? I read the statute differently. Well, I'm just reading the language. It just said a sign does not remain in place, a temporary sign does not remain in place for a period of more than 60 days in a calendar year except that a sign erected by a resident on the resident's residential property may remain in place for longer than 60 days in a calendar year. What am I misreading? Well, if that's the case, then I apologize. I take that back. Well, you're talking about the variance as opposed to the residential exception. Well, I was talking about the variance. Right. So there's a residential exception, which means you can have it forever. The question is, if you apply the variance to the residential exception, is it a 60-day limit, or is it overridden by the forever limit? Right. And I believe that's the 60-day limit. But getting back to – Well, just so I understand, I want to make sure, because what I read was the statute, and then the statute also provides that DOT can adopt rules for due caution for variances, and that's what I understand the regulations to be. They are implementing the statute. Is that not correct? Right. Okay. I want to talk about the facts of this case as it pertains to Mr. Lombardo, and I'd appreciate it if you'd help me out as I go along. I understand that Mr. Lombardo has a house in Oregon that's in a residential district. No commercial enterprise is conducted in that house, and none is intended to be conducted in that house. Mr. Lombardo does not want to engage in the business of a commercial outdoor advertising business. All he wants to do is inform his neighbors and anybody who sees the sign that he has a deep moral conviction about peace, and that's an admirable trait for human beings to take. He says, I want to put up a sign on my property, my front lawn that says peace in the Gulf. Now, he doesn't want to advertise anything. He doesn't want to engage in any business enterprise whatsoever, and the statute in the state of Oregon says, yeah, you can put up that sign. There's no question about it. And even if you want to put up a sign that says free Saddam Hussein, you can even put up that sign if you wanted to. That's all he wants to do. He doesn't want to engage in any commercial enterprise that distinguishes between onsite and offsite or anything else. The only problem that you have with the statute is the size of the sign. It has nothing to do with context. Have I recited the facts correctly? Well, actually, he does have a commercial enterprise at this residence. What's that? He does have a commercial enterprise. He sells German shepherd dogs. That's not in the record. That's right. It's not in the record. It's not in the pleadings, no nothing. That's right. And I'm talking about the record in this case. Yes, that's right. He has no desire to engage in any commercial enterprise involving on his property. Right. He doesn't want to engage in a commercial enterprise of outdoor advertising. All he wants to do is merely state his opinion about peace. And the Oregon says you can do that. So where's the beef? Well, I think if we can get this case remanded, we can then have evidence showing that he lives on the Redwood Highway, which is a major thoroughfare from just north of Crescent City into Oregon into State 5, and the speed limit at his house is 55 miles per hour. And the evidence could possibly show that a smaller sign cannot be read by a motorist going 55 miles per hour. See, the magistrate in this case held that the statute as applied to your client is constitutional. And nobody talks about that. Well, but counsel, okay. I understand you're also making a facial challenge to the statute, right? Yes. Now, when we're talking about the variance, is your challenge based on the fact that it's a prior restraint on First Amendment speech? Yes. Without standards? Yes. So in that situation, you're not required to have applied for the variance, right? Yes. You need to meet that challenge. And what do you complain about with respect to the variance? Well, there are no standards for good cause shown. It could be anything. Somebody might come up and say, well, I'm a single mother. That's my good cause shown. And it's up to discretion of the government employee to say, okay, you can speak. You're a single parent. Or somebody might say that he has AIDS, he or she has AIDS. And I'm not giving discretion. What about the lack of any time limits? Yes. And FWPBS versus Dallas said that even there must be time limits on applications for the right to speak. Otherwise ---- If you were diluting on a content-based basis, then you have this problem between reason and Dallas and one hand and Thomas on the other as to where this case fits. So where do you think it fits? Well, I think Thomas says that even content-neutral statutes, you cannot have undue discretion on the part of state employees. In Dallas and Thomas, there was, in fact, a time limit. Yes. They didn't really address the question of administrative time. Right. They didn't address it, but they made the statement that they did hold that they cannot be under discretion. Dallas comes along prior to that and says not having a time limit is a species of unbridled discretion. So here we have the problem with an applicant can make an application and it may never be acted upon. May take three. I have a slightly different kind of question. Sure. What exactly are you asking? What rule do you think would be a valid rule to come out of this case where you would win? And to tell you where I'm going, what I'm concerned about is how that would ---- and the rules that I can think of would comport with the discovery challenge. So what's the rule for that? Is the rule that you want that noncommercial speech has to have an exception to the on-site sign ordinance, or is it that there has to be a substitution rule? Or what is it exactly? What is it you want to have in the discovery challenge? Well, starting with the on-site, off-site, the rule, as I see it, would be that if commercial speech is allowed, then all noncommercial speech must be allowed on that same sign under the first amendment. How does that help you? That would go to the question of the person who has a business, a commercial activity, but wants to put up a sign that's expressing a political opinion on that activity. Wouldn't that favor a ---- Under the statute, would that be allowed? Well, under the statute, no. So wouldn't that favor commercial owners over residential owners? No, because anybody could put up a sign, this house for sale or this lot for sale, that's commercial speech. So it's not limited to having a commercial enterprise at the residence, because commercial on-site speech is permitted and it could be this house for sale. Well, wait a minute, William. You started off by saying that your client lives in a residential neighborhood, has no intention of holding his house out for anything, although now apparently there may be evidence that he could do his puppies for sale. But the statute talks about activities, the on-site being activities on the premises. So if he were carrying ---- let's say he does his puppies for sale. He could do that. He could advertise that. You're saying that once he gets his foot in the door with a commercial activity on-site, then he can substitute, should be allowed to substitute a non-commercial message? No. So then he could put his Gulf War, anti-Gulf War statement up? No. Since he has the right to put a commercial message on, whether he does it or not, he has the right to do that. He should also have the right then to put a non-commercial message. How does he have a right? I don't see that he has a right. How does he have a right? If he owns a tire store but it's down the street at the corner, he can't put up a sign at his house advertising his tire store. That's right. And that's not a First Amendment violation, because the First Amendment doesn't require that all commercial speech be treated equally. But it does require. If I ask a question, it seems to me that Discovery Channel can play a huge role in that. Because Discovery Channel seems to say that if the rationale applies equally to both commercial and non-commercial speech, and here it does, but with the signs and the declaration and so on, it doesn't matter for aesthetic or safety purposes or any item to think of, as to whether it's commercial or non-commercial speech. So if he were to end up with a rule that favored non-commercial over commercial speech, and that seems to be inevitable in the times when we are asking for, how does that compare to Discovery Channel? Well, I think it's consistent. Because it's consistent by not favoring commercial speech. Right now, the Oregon statute favors commercial speech. But you would have favored non-commercial speech, right? Because you want to, as I understand it, Right. If you have the right to put a commercial sign, you should also have the right to. So the only off-site stuff that could be on-site signs is non-commercial. Right. That would be correct. But how do you get the right to put up the commercial sign for your client that gets his foot in the door?  But if his house isn't for sale, then he hasn't qualified yet. So I think that's what Judge Tashima was worried about, that you're saying that he could get his puppy sign, he'd have to actually do a business there, and then he could convert it to a political message. But until he gets the right to put the sign up under the commercial on-site standard, he doesn't have the right to substitute or put in a non-commercial message. Well, no, that's not how it works, though, because he has the right to put up a commercial message. Not until he's got some kind of on-site activity that the commercial message is referring to. But he has the right to put up this house for sale, which is commercial. But he's not going to do that. But he doesn't want to sell his house. If he's not selling the house, the activity isn't going. He could have room for rent. He could have all sorts of commercial. Isn't what you're really asking that if there is an on-site restriction for commercial speech, there should be no restriction for non-commercial speech? Isn't that really what you're asking us? No. If on-site commercial speech is allowed, then all non-commercial speech must be allowed. Must be allowed. Correct. Yes. Right. That's what I'm saying. On premises. Ms. Gershon, let me come back to this variance business again. As I understand it, you challenged the variance procedure on two grounds. One is that the for good cause shown is is not a specific standard and two, that there's no time limit. Now, with respect to both of those issues, isn't it possible in these five cases pending before the Oregon Supreme Court that the Oregon Supreme Court could construe the statute in such a way as to cure your objections? Well, the variance is not before the Oregon Supreme Court. The only thing that's before the Oregon Supreme Court in the cases that I'm involved in are the on-site versus off-site distinction. That's the only issue? Yes. The variance issue is not before that court. That was never argued. Well, you think we should send it to that court? Excuse me? You think we should send those questions to that court? That certainly would be a possibility. Well, I represent a billboard company, and it's got a number of billboards, and they don't have any permits. Oregon has a system where it requires a permit to put up signs. The company that I represent puts up signs, but it has no permits. But one of the problems is permits are no longer available. So what they've done, the State has done, is locked in the old companies are the only ones that could put up signs. There's no issue pending before the Oregon Supreme Court now related to the construction of the statute. It was like the statute that we're dealing with. Yes. I'm getting to that. And the argument before the Oregon Supreme Court is the on-site, off-site thing. Therefore, the argument being the permit system is unconstitutional. And as a result, my client doesn't need permits to put up signs. That is the argument before the Oregon Supreme Court. Is your client's problem being resolved if the Oregon Supreme Court read a substitution clause into the statute? Yes. Mr. Lombardo's problem would be resolved. That's what distinguishes it, this case, from both clear channel and outdoor systems. Yes. And outdoor systems and clear channel, all noncommercial speech were allowed on all signs. So it wasn't favoring noncommercial over noncommercial. That's right. But it's making them equal, basically, to the use of the substitution clause. The counsel's letter, though, that I got today points out that Oregon has Article I, Section 8, which goes much further than the First Amendment. And all speech is considered equal. So to allow all noncommercial speech, it must allow all commercial speech. But still, when you're applying standards under the United States Constitution to the speech, there is a more intermediate standard for commercial speech than there is for noncommercial speech. And you have a much higher standard that the State has to meet to put restrictions on that speech. Yes. I agree. Changing topics just for one quick question. As to your as-applied challenge, I understand, if I'm reading it correctly, that that was rejected only on the grounds of standing. Is that true? No. My recollection is that it wasn't on standing, that it was on the merits. Well, I read the first part of the Banchester judge's opinion where it says you didn't apply for variance, therefore you don't have standing. And then Judge Hogan says, I grant the motion to dismiss for lack of standing. Your interpretation is that it went farther than that in its resolution. Okay. Well, I may be correct in that. I'm asking for your interpretation. Well, you may have refreshed my recollection now. And apparently standing was a problem. And we feel that standing, without application, there's no need to apply for it and still have standing if it's unconstitutional. There's no need to comply with the ordinance or the statute. Could I come back? I'm still confused on your substitution clause. You're saying that your construction of Oregon law is that if you could qualify, if your client could qualify for the commercial on-site sign, just in theoretical, because he could put a for-sale sign up or for-rent sign, then he could go ahead and put up his piece in the gulf sign in the larger size without having actually to advertise his house for sale or actually having to put a for-rent sign up. Is that what you're saying? Yes, that's what I'm saying. Let me ask you, would that be a violation of the Oregon Constitution to read something like that into this statute? Right. Because if it only allows noncommercial speech, that would violate the Oregon Constitution. That would be the result, because Oregon treats all speech equally. So the net result of your argument, whether you look at it my way, or the Oregon Constitution, either way, if you're going to be allowed to put noncommercial signs up, then also people are going to be able to put commercial signs up. Is that right? That would be the result in Oregon, applying Oregon law. And, you know, there's nothing bad about that. The Supreme Court said in the city of Ladue that residents have a way of regulating their own signs, and it's not going to be so terrible if everybody puts up their own. Is there any size limit on the on-site signs? Well, there would be a size limit. The county would have a size limit. We're talking about state law now. I see. Each county and city also has limits on signs, which is not being raised here. It will not be a mass bedlam, I don't think. And getting back to city of Ladue, now city of Ladue gives the people the absolute right to display signs at residences, and I think it's a violation. But doesn't that case also say that the government has the right to regulate size and other aspects of the signs? I think later cases said. No, no, that case. That case said. I don't see your argument that if he had a right to put up a commercial sign, then he could do it. It seems to me that either way the activity has to be there. What Oregon is saying is you can advertise. You get one free billboard where the activity is actually conducted, and we don't care if it's commercial, non-commercial, political, whatever it is. You get one free billboard at the actual location where the activity takes place. If he had meetings of the Peace and the Gulf Association at his house and he owned a tire store down the street at the corner, I think he could put up a giant billboard for the Peace and the Gulf Association headquarters, but I don't think under Oregon law he could put and go to my tire store down at the corner. That's right. But as I pointed out, it's still very rare. Now, if somebody wanted to put up a speech. I don't see why one's more rare than the other. Most people just live in their house. Some people sell on eBay out of their house. Some people have Apple stands at their house. Some people have associations of one sort or another that meet at their house. The Ceramics Association, the Peace Association, the stamp collectors, whatever they want. Well, if somebody wanted to put up speech that reflected the moment's thinking, like he wants to say something about the forthcoming election, he would not be able to do it if he's just a common person who doesn't have headquarters. How about this, though? Let's say that the sign says Peace and the Gulf T-shirts available here. I would say that the state of Oregon would probably say that for Peace and the Gulf has to come down, T-shirts are okay. That's probably what the state would do. Why do you think so? Why? You mean if you have Goodyear tires, you have to take down Goodyear and leave up tires? I mean, under your rationale, the state would be going in and excising these commercial signs as well. That doesn't make any sense. Well, again, we haven't introduced evidence on that. We haven't taken any discovery. It would be interesting questions to ask. Doesn't this have to be read in conjunction with the zoning laws? Yes, of course. This has to be. And there may be restrictions on the zoning on the number of signs and the size of signs. And those zoning activity can be engaged. Right. Right. And it may be perfectly justified outside the First Amendment. We've just about used your time. We'll give you a minute on rebuttal. Okay. Thank you. May it please the Court. Janet Metcalfe for the appellee. I'd like to begin with what I hope will be two clarifying points, although perhaps not. And the first has to do with what is and is not before the Oregon Supreme Court on the five cases that are before that court. I agree with opposing counsel that there is no issue in any of those cases, certainly that I can remember, that has to do with this variance procedure per se. Certainly the on-site, off-site distinction is before the Oregon Supreme Court in all five of those cases, both as a First Amendment issue and as a state constitutional issue. Then to you, your opponent said he would have no objection if I heard him correctly to sending this to Oregon, say through a certification process, to let Oregon tell us what the statute does. Right. And I think that would, that's certainly something the state would welcome. I think, I don't believe, and I've handled, I think, all of these cases, at least in recent years that have come up in state appellate courts. I don't believe that there has been any case that's been anywhere near these issues. We don't have any construction. I don't think we even have any sort of real administrative agency construction of what these, what the statute and what this rule means. I'm just not understanding. What issue would you want certified that bears on the First Amendment? Right. Can you be a little more specific as to what you would welcome? Well, precisely what for good cause shown means. But that issue is not before the court. Right. It's not before the court. Right. But what issues are before the court? There are five cases. There are, I think, about an average of 12 issues in each case. Maddlingly, from my point of view, they differ a bit from each case to each case. On-site, off-site I think is the major issue. But it's a question of what the on-site, we had a lot of discussion before about what the on-site limitation means. That is, what is an activity? Right. What if you had a sign saying everybody here supports the President? Right. What if you had a sign, what about your opponent's hypotheses about when you could, what was a commercial activity and so on? Are those kinds of questions? Yes. Yes. And I can certainly tell you that the State has advocated a rather broad reading of what activity means in those cases as a sort of preliminary matter for the court construing the statute and deciding whether it is constitutional. Obviously, what the court will reach, how it will decide the case is anyone's guess. Do we have a State constitutional claim in this case? No. So if the Oregon Supreme Court reading the State Constitution broader than the First Amendment under the Federal Constitution were to decide on the State Constitution, those five cases wouldn't put us money ahead in deciding our case, right? Right. Have you finished answering Chief Judge Crow's question about what questions could be presented in addition to the Oregon Supreme Court? I don't, I don't. You said the construction of, you know, good cause. Anything else? If you were asking the question, how would you phrase it? I would ask the Supreme Court for construction of the statute, what for good cause shown means. What about a timing question? I was going to, I'm sort of pausing here because I'm trying to make this up as I go along, obviously, but I think one might add the question that if the court were to determine that absent a time limit that was unconstitutional, would the court then read a time limit into it? Are there regulations here that inform? Only the regulation that's set out in the appellant's brief. I guess these pages aren't numbered. But it's OAR 734-060-0175, and it's at the end of the appellant's brief. Why doesn't he have it? That's the only pertinent regulation. That seems to have some kind of standard, the visibility. Well, it sets out two examples of things that are exemplars of what good cause might be, one being visibility and the other one being a sort of pragmatic consideration that you already have a sign and seems kind of unfair not to let you put it up. Whether that's an adequate definition is something the parties have disagreed about. The opposing parties argue, if I understand it correctly, is to say, well, these two examples don't tell us very much. This statute does not have what we've been talking about with your opposing counsel, a substitution clause. Right. Some of our cases have looked to substitution clauses as a way of narrowing, you know, the constitutional or avoiding the constitutional issues. Do any of the cases that are before the Court present the opportunity for the Court to read in some kind of substitution construction in these, or is that not part of it? My recollection is that outlaw media has not asked for that remedy in any of the State law cases. I might be incorrect about that, Mr. Herson. Could I then ask you to follow up with that? Counsel argued that he could, his client could qualify for the on-site sign by putting a for sale sign or not even having to put the for sale sign up, and then once he had that, he could, in effect, de facto, substitute in this peace and the gulf sign. Is the issue of what it takes to actually have the activity going on before the Court, or does the statute lend itself to that construction by us that once he can postulate a commercial use, then the statute has to be construed as allowing him to put up a noncommercial message in its place? I don't think so, at least in that way, if I'm understanding the question correctly. I don't think the statute fairly can be interpreted as containing a substitution clause, per se. But I think activity is a broad enough concept. What is your position, or what is your position before the Arkin Court if the sign says everybody in this House supports Joe for President? I think that's adequate. I think that's an activity. I think activity is, I heard counsel say that somehow you would have to have a campaign headquarters and that we had taken that position. And I certainly don't understand us to have taken that position in this case or any related case. Suppose he left out the words everybody in this House supports peace in the gulf and just said peace in the gulf. I think peace in the gulf, it's certainly fine except for size. In this instance, for example, we don't even have to worry about whether it's on site. It's simply you've got it at your residence, it's what you want to say. As long as you don't say it too loud, it's all right. But how does the state justify putting a size restriction on a political message and not imposing the same restriction on a commercial message? Well, it's a message generally on signs you have at your house with an exception for any on-site sign, commercial or non. The distinction is not really, I don't think, fairly between commercial and non. It's between on-site and off. Isn't the definition of on-site? I guess what your argument is is that I read the definition as having to relate to some commercial activity. But you're saying you read it more broadly and perhaps the Oregon Supreme Court might read it more broadly not to relate solely to commercial activity. The court's, the Oregon court's normal approach would be to take the dictionary definition of what activity is. And my recollection of that, because I know it's set out in the Oregon Supreme Court briefs in those cases, is that it's a remarkably broad definition. And there is nothing that I see in the statute to narrow, it doesn't say substantial activity or anything like that. Let me ask you this then. As I read the statute, the on-premises relates to activities conducted on the premises, correct? And you're saying that the word activities is enormously broad. What then is the purpose of the so-called exception that you can always have on your premises a sign of up to 12 square feet? Why would you need that if activities didn't have some restriction within it? Well, and it may be what one of my colleagues calls belt-and-suspender sure. This statute was amended in a fairly major respect in 1999 at a time when I think, frankly, the State and the agency were very concerned about the constitutionality of the statute. One thing they did was to add the word activity. Another thing they did was to make that exception for signs on people's residences broader before it had been, if my recollection is correct, limited to political signs. And I think they were just trying to be doubly certain that they were not injecting content-based restrictions into the statute and were opening things up as much as they could while still not conflicting with the Federal law. But they left one other thing, one other prong that we have to kind of go down. And that is, if you don't fall within this on-premises group and your activity, whatever you're doing isn't an activity, if you have non-residential property, then you are restricted both by size and temporal restriction in terms of the 60 days. How does that fit in? Because that could be political speech on a vacant lot, for example, correct? So why should political speech on a vacant lot be different than somebody who conducts a non-profit, non-commercial activity under the broad on-site provision of the law? But I think under the case law, the distinctions we have to worry about are favoring commercial over non or drawing distinctions between categories of non-commercial speech that are not permissible. I think it's fine to say vacant lots will be treated different than residencies for purposes of what signs will allow. But on the vacant lot, no sign would be permissible unless, of course, you had a permit. I mean, permits are a code. But if you had activities there, couldn't you? Yes. I mean, if you had a sign. I guess I was assuming a literally vacant lot. Peace in the Gulf, peace advocates demonstrate here Thursday nights at 8. Right, right. Then it's legit, right?  You can have billboards.  You need some activity on them. Right. But you appear to be saying that holding an opinion is an activity. I don't see any meaningful difference between the hypothetical that differs on everyone in this House supports peace in the Gulf and saying peace in the Gulf, because the message basically is everybody, somebody in this House supports peace in the Gulf. How do you draw those distinctions? There's a case, and I apologize. I've forgotten now which one of the on-site, off-site cases it is. But there's one that essentially goes that far and says that the holding of any opinion by someone at that place is on-site. So what's wrong with this, then? I'm not sure there's anything wrong with it. The annoying thing here is that because Oregon, and I sort of mean jurisprudentially annoying, is that because Oregon itself hasn't answered any of these questions, we don't really know, for example, whether the Oregon Supreme Court would go that far or not. So it creates a – Well, join, join. Let's just say we agree. By the way, do you have some idea or give us your best estimate on when you expect the Oregon Supreme Court to decide the lead case? I was afraid someone was going to ask me that. The Oregon Supreme Court candidly in the last five or ten years has hardly been a model of speed. I've forgotten how long it took them. There was an outdoor media case that preceded this latest round. It took them, I think, two or three years? Yeah, two or three years. To decide that case. I think it's, however, also fair to say that some of the members of the court are new. The court is, I think, trying very hard at present to pick up the pace. I am hopeful that we would hear within a year, but obviously the word hopeful is in there. Counsel, help me on something else. I'm wondering why the plaintiff does not have a good challenge on grounds of vagueness to the variance provision for good cause shown. He says, I want to get a variance, but I don't even know what to put in my application because I don't know what for good cause shown means. Why doesn't he have a good challenge on that? To my mind, there are three things, I think, that may distinguish this case from cases that may seem to have somewhat similarly amorphous standards. One is that some of those cases really vested the decision over a relatively elastic standard to a certain person. If the mayor of this city believes that something is such and such, then it is, in essence. We don't have that kind of absolute delegation of subjectivity here. Presumably, if the agency says we don't think that's good cause, no one is, no one owes that decision any deference. The other is that for good cause, maybe unlike some of the other standards. I didn't understand. Sure. I don't know what you meant by that. If they say we don't think it's good cause, then he doesn't get his variance. Right. But some of these cases involve standards that are actually quite odd because they seem, if I understand them correctly, to have almost said if the mayor of X city thinks that this is harmful to the public, that's the standard. If the mayor thinks it's actually almost like part of the standard, here it isn't. What the agency thinks is obviously part of its decision-making process, but not a part that anyone else is going to defer to or pay any attention to other than to say it's true. Right. Right. But since it's not part of the definition, I'm... Well, what standards would one apply if you're sitting on the board and said for good cause? Well, the other thing I was going to say is that for good cause, unlike some of the standards we've had in other cases such as aesthetics, for good cause at least is a standard that has some kind of, I think, currency in the law that people can... Okay, tell me if I'm Lombardo's lawyer, how do I write the application form for a variance? Well, actually... How do I put in it? Lombardo's got it in his complaint because in his complaint at one point he says, this isn't big enough, nobody's going to be able to see it. Well, that's actually one of the specific examples. Is that good cause? Hmm? Is that good cause? Yes. That's one of the specific... And by all the right senses maybe. Maybe. The most common order issued by trial judges in the United States, particularly in domestic relations cases, are orders to show cause. Right. Is that constitutional? Yes, and that's what I was attempting to say earlier and perhaps did not say it all well, is that good cause is... But then judges will say we're smarter than administrative people, so therefore we... Well, no doubt I would be the last to disagree, but... And obviously judges would be available here to second-guess the agency and could freely do so. I don't think this is an area where... And the good cause only has to do with the configuration of the sign. It has nothing to do with the content of the sign whatsoever. How would we know? There's nothing in here that requires a statement of reason. So how would we know why the sign was turned down? You say, for example, that it doesn't contemplate the mayor making a personal decision as delegated to a broader body. But even so, if all we know at the end of the day is he didn't get the approval, there's nothing in this statutory structure that requires them to issue opinions. Does this matter practice? The board, the Department of Transportation, whoever implements this, enforces this, would they, as a normal practice, issue some statement of decision? There's certainly nothing specific in these regulations or statutes that requires that. As a general matter of administrative procedure in Oregon, the Oregon appellate courts have perhaps insisted, overstates it, but impressed upon state agencies the fact that they must both set out the findings of fact that underlie their orders and link those findings of fact to a rationale that then leads to a decision, what's been called in Oregon administrative law both substantial evidence and substantial reason. So as a general matter of administrative law in Oregon, the agency would be at some peril if it did not set out its reasoning. The other available avenue is that there's a provision in the Oregon Administrative Procedure Code, which essentially is a mandamus kind of provision. Someone could mandamus the agency if they failed to give reasons and demand that they be given. Let me ask a question on the as-applied challenge. Is it your interpretation of what Judge Hogan did that the as-applied challenge was dismissed for lack of standing? Yes. So we haven't had any discovery on that, which is not dealing with the full record. But as I understand his argument today, it is I want to put my sign on this property longer than six months. The variance only gives me six months. So why isn't that a good reason to say that applying for a variance would be futile for what he wants to do? Well, first of all, I don't read the six-month limitation in the same way that counsel does. Right. But that's what he alleges. It is. And this is a dismissal. It is what he alleges. But my second, and I'll just flat out frustration with this. Until this afternoon, I had never understood opposing counsel to be challenging the ruling on standing or to be challenging the ruling that his as-applied challenge had been dismissed in any way. His brief never mentions the as-applied challenge. It doesn't contest the standing ruling. That's why I asked about it, because it went back and then it came back on that. And I thought it wasn't in this appeal. But we'll check the brief. I thought so, too. I had not understood that to be raised. Do you agree with him that if he gets a variance, that the time limitation and the variance would be what's controlling and it would override the normal forever standard on residential as a matter of law? You know, I'm not sure. And I realize that's a completely unsatisfactory answer. But I see some real tension between the statute and the rule. The statute clearly seems to say you can have a sign at your residence for as long as you want and 60 days doesn't apply. But then the rule maybe and maybe not says, well, if you get a variance, then it can only be up for 60 days. I think that's not what the rule means. But I would agree that I don't think it's a matter that's free from all doubt. It says longer than 60 days in a calendar year. I don't think that's the same as forever. But I don't know what it means. Well, no, I meant the statute. That's what the statute says. To back up, the statute has been in effect for a number of years. Do you know, is there a history of grand or not grand variances? I mean, is there some kind of record that could be discovered on this? I don't think so. And, in fact, and I now don't remember whether this ‑‑ I think this provision was new in the 99 law. I think there have been few, if any, cases other than this one that have dealt with this aspect of that relatively new statute. So, unfortunately, I don't think we do know precisely how the administrative agency or the state courts. But you're not aware of any administrative decisions either granting or denying a variance under this statute? No. And certainly we don't have one here either. Counsel, on the variance, what is it that the state can grant as a variance? Is it only on the size of the sign, or is there anything else that they can vary? In other words, if I come and I seek a variance, what is it that I'm looking for? Is it only ‑‑ is it only to increase the size of the sign, or is there anything else that I can request a variance on other than the size of the sign? I think it's size only. So that's the only thing that we're asking for a variance on is the size of the sign? Right. Right. What about time limit duration? Well, I don't know. Or at the least, does it say ‑‑ Also, you get compensation. Is it renewable? Say, if you get a variance, is it renewable? I don't think that's clear from the rule. I think the rule suggests not. Signs must be removed within 60 days after the date of erection. I think that probably suggests that you can't renew them. Although, again, that may not be entirely clear from the rule. And, again, I don't think that's been litigated at any level or that there's been any agency interpretation of the statute that I could point to. Back me up for just a minute to good cause. The way the regulation reads, it says good cause may include a showing that the content won't be visible or a showing of hardship because the manufactured sign is bigger than three by four. Are those the only kinds of good cause so we can ignore the apparent vagueness of good cause and just substitute those two things? Or are those just examples and good cause could be anything else as well? I think they were intended to be examples. I think if it were necessary to save the constitutionality of the scheme, to see them as encompassing the world of permissible examples, that that would also be a permissible method of interpretation. What's the usual time between the time the Oregon Supreme Court hears a case before they make a decision? I'm referring to the five cases they got before now that involve this case. Again, it's very difficult to predict. I would hope within a year. I would hope within six months even. But I suspect they're particularly extremely difficult issues under the state constitution in this case in part because there are two other cases pending before the court which have nothing whatsoever to do with signs but do have to do with Article I, Section 8, and that have raised the issue of the court's whole methodology for analyzing issues under that state constitutional provision. So the court has some extremely difficult issues before it. Did you represent the state in those cases? I represented the state in the sign cases, not in those other two cases involving Article I, Section 8, but I certainly know about them and know what's before the court. If we thought that whatever turned out to be the right construction of the statute was a content-based discrimination or distinction, what does the state have as a state articulated any justification for this distinction? What justification do you have for it? No, but the state doesn't have an opportunity to at least as, for example, if the court were to focus on any of the any or all of the exceptions that are mentioned in the dissent, the panel dissent, the state has not had an opportunity to attempt to advance any rationale for why some of those might be necessary. Now, in some cases it may be at least to some extent self-evident why public safety signs would be perhaps a good idea and the state might have a rather strong justification for them. In other cases, admittedly, I think the state would need an opportunity to put on a rationale because it's less obvious why public convenience signs, for example, are, must be allowed, must be exempted. But it's not obvious why as to otherwise identical signs on a house or a building, there would be any justification if you thought this was a content-based distinction. And the one justification I've seen, not certainly in the record in this case, but in discussions in other cases of why an on-site, off-site distinction per se might make sense, is the idea that people who have on-site signs are less apt to change them frequently and that that may be, therefore, less distracting to motorists and the idea that because it's on their property. Different kinds of on-site signs, right? There are on-site, but some on-site signs are okay and some on-site signs aren't okay and it depends. Well, I'm using on-site as a term of art for the moment. To me, not only literally on my building, but related to activities in my building. Okay. It becomes confusing. But identical signs on identical buildings, some of them are okay and some of them are not. Right. I just want to be clear on one of the points you made. Is it Mr. Lombardo, Mr. Lombardo's sign would not be prohibited under this statute if the Oregon Supreme Court decided that off-site signs definition C, activities not conducted on the premises on which the sign is located, was so much broader than commercial activities. It could just be thoughts and ideas. And you think there's a possibility that the Oregon Supreme Court will really continue it that way? I do. I may be in the universe of one example. This whole thing would be for not. Yes. Is that what the State is arguing in the Oregon Supreme Court case? We haven't gone quite that far. But we've argued for, without going perhaps that last step, we have argued for a very broad reading of the word activity. Including the holding of opinions? Well, that may be the one thing that we've frankly not been entirely clear about. But we've suggested that pretty much any activity, and at some point you begin I think to almost end up at the same place, whether you're quite willing to admittedly cross that line or not. If activity becomes so little, the holding of a meeting, you call it a meeting, three of your friends are there and you're having dinner, at some point it becomes the same thing. That's the whole law because anybody can put up any sign anywhere. I mean, that reading of it would just be absurd. No, I think not. Because I think realistically, other than perhaps an election season when signs are proliferating everywhere in Oregon, and I can assure you of that, I think, frankly, simply as a pragmatic matter, most people just aren't really eager to put up big signs on their property announcing what their views are. They might want to keep them a bit private. I remember driving through the south in the 50s, there were all these signs on people's barns. Somebody would come around and ask them to let them paint their barn with a sign that advertised Dr. Pepper or some chewing tobacco. And it seems like for a very small amount, a person could decide he had the opinion that Fords are better cars or use Yahoo as your Internet search site. And people would put signs on billboards at their houses for that. It seems like activity, to me, in anything, has to mean something people come here to do. Well, but the trouble is that when you get into the world of ideas, what one is doing, I think, becomes elusive. It's probably less elusive with a commercial activity. Well, if you look at it not in terms of dictionary definitions but with a kind of learned hand approach of attributing some rational purpose to the people who wrote the legislation, the sign would be here's why you might want to turn off the road and go to this place if you're interested in buying apples or going to the Peace in the Gulf meeting or whatever. That would be the function of the activity exception. And I don't disagree with you, although I have to say that the Oregon Supreme Court is very much into being literal these days. The learned hand was literal. The Oregon Supreme Court starts and ends with Webster's Third International Dictionary. That he defined the words so that they would comport with a rational purpose as opposed to just being one of the 17 definitions in the four dictionaries. The other irrational part of it is that if you take it literally, then you can put a Peace in the Gulf, buy T-shirts that say that here, and that is non-content. Because that's what we had in the City of Phoenix case on the buses. The idea of getting around the content-based restriction was they put these big messages up and then little letters, you can buy T-shirts or bumper stickers that say this at this address. And it seems to me that however you slice it, it's not a very rational distinction that you're drawing here, whether it's a broad interpretation of activity or literal, but if you just put a tagline saying that it's commercial. But if you're, in fact, selling T-shirts there, I think that's got to be an activity on the premises. It seems to me that the main reason you're making this argument, this broad definition of activity, is so that you can convince the Oregon Supreme Court that this statute complies with Article I, Section 8. It doesn't have so much to do with the federal problem, does it? Well, it may. It's more the state issue. Yes, that's certainly I think. Counsel, your time has expired. Thank you. Thank you. Does the Court have any questions for me? Counsel, does the State of Oregon make any provisions for non-property owners? Is there any way that a non-property owner is entitled to put a sign on property that he or she does not own? Yes, the statute is for residents, so whether one rents or owns. If you don't reside there, is there any possibility of putting up a sign on property that you don't own? No. So we have a whole class of people who cannot put up signs anyplace in Oregon. That's right. Homeless people cannot put up signs. Any other questions? Did you preserve the issue of as applied in your briefs? I take it you wrote the briefs. Yes. I believe that the briefs do mention it's an as applied challenge as well as facial. Or would you propose homeless people could put up signs? They have a right to go to somebody else's property and put a sign up? No, they can't. So that's not an issue here, is it? That's right. It's probably not an issue. They are prohibited from putting up signs because they don't have a place to put them. Thank you, Counsel. Thank you. The case is submitted to decision. That concludes the Court session. And the Court stands adjourned.
judges: Schroeder, Ferguson, Kleinfeld, Tashima, Thomas, McKeown, Wardlaw, Fisher, Berzon, Clifton, Bybee